UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

EPHRAIM STERN,                                   :

                    Petitioner,              :

        -against-                          :

                                  :

UNITED STATES OF AMERICA                          :

                                  :

               Respondent.              :

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>March 14, 2013</u>

09 Civ. 6044 (PAC) (FM)

<u>ORDER ADOPTING R&R</u>

HONORABLE PAUL A. CROTTY, United States District Judge:

      On July 2, 2009, petitioner Ephraim Stern ("Stern") initiated this action to vacate his conviction on six counts to which he pled guilty.  Stern attacks his conviction on the grounds that he is actually innocent of some of the charges in light of the Supreme Court's intervening decisions in <u>United States v. Santos</u>, 553 U.S. 507 (2008) and <u>Cuellar v. United States</u>, 553 U.S. 550 (2008).  He seeks: (1) an order vacating, correcting or setting aside his sentence pursuant 28 U.S.C. § 2255 ("Section 2255"); (2) a writ of habeas corpus under 28 U.S.C. § 2241 ("Section 2241"); (3) a writ of <u>audita querela</u>; or (4) a writ of error <u>coram nobris</u>.

      Stern makes three arguments on the merits for vacating his conviction: (1) there was no factual basis for his plea; (2) he did not voluntarily and knowingly plead guilty; and (3) his continued incarceration while being innocent violates due process and the Eighth Amendment.

      On January 4, 2013, Magistrate Judge Maas issued a Report and Recommendation ("R&R") that Stern's petition should be denied.  (ECF No. 44.)  He concluded that although there is some support for Stern's position that he is actually innocent of some of the charges, he

1

is nevertheless not entitled to the relief sought.  No objections were received.  Accordingly, the

Court reviews the R&R for clear error.  See Feehan v. Feehan, No. 09 Civ. 7016 (DAB), 2011

U.S. Dist. LEXIS 14045, 2011 WL 497776, at *1 (S.D.N.Y. Feb. 10, 2011).  Finding no clear

error, the Court adopts the R&R and DENIES Stern's petition.

## BACKGROUND[1]

The six-count criminal Information charged Stern with conspiracy to commit bank fraud and

to transport stolen money (Count One), bank fraud (Count Two), conspiracy to commit

transportation money laundering (Count Three), transportation money laundering (Count Four),

conspiracy to commit transaction money laundering (Count Five), and transaction money

laundering (Count Six).

The charges arise from two separate schemes.  The first scheme involved a stolen checks

cashing scheme, resulting in Counts One through Four.  In or around 2000, Stern met a

conspirator who supplied Stern with stolen checks.  In November, Stern arranged for another co-

conspirator to deliver the checks and have them cashed in Israel.  In December, the co-

conspirator returned to Israel to pick up the proceeds.  The parties dispute how the proceeds

found their way into the United States, but agree that the money was transferred.[2]  In January

2001, a second batch of stolen checks was transported to Israel.  The total value of the checks

amounted to approximately $1.3 million.

In the second scheme, Stern acted as an intermediary between Israeli money launderers and

Colombian drug traffickers.  The Government charged Stern with personally picking up and

---

[1] All facts are taken from the R&R unless otherwise noted.

[2] Stern contends that a co-conspirator traveled with the cash on a plane from Israel to New York.  The Government contends that they made use of three "hawala" money transfers (comparable to those used by Western Union) involving releases and payments in Israel, London, and New York.

delivering narcotics trafficking proceeds and with using some of the proceeds to purchase

merchandise that he shipped to a representative in Panama to give the drug traffickers "the cover

of a legitimate businessman."

On December 15, 2003, Stern pled guilty to all six counts.  On November 3, 2004, he was

sentenced to an aggregate term of 156 months imprisonment, which he is serving at Federal

Correctional Institution at Otisville.  Stern timely filed a notice of appeal.  Stern's counsel filed

an Anders brief.  His conviction was affirmed on February 9, 2007.

On June 2, 2008, the Supreme Court decided Santos and Cuellar.  Santos held that in the

money laundering statute, 18 U.S.C. § 1956(a)(1), the term "proceeds" referred to the "profits"

rather than "receipts" in the context of revenues from an illegal gambling business.  553 U.S. at

509.  Only a plurality, however, held that this definition was without regard to the nature of the

criminal activity.  Id. at 514; 528 (Stevens, J., concurring).  Cuellar held that a conviction under

the transportation provision of the money laundering statute must be supported by proof that the

"purpose—not merely effect—of the transportation was to conceal or disguise . . . . the nature,

the location, the source, the ownership, or the control of the proceeds."  553 U.S. at 567-68.  The

Second Circuit subsequently extended Cuellar to the "financial transaction" provision of the

money laundering statute.  United States v. Ness, 565 F.3d 73, 75, 78 (2d Cir. 2008).  Stern

claims that he is actually innocent of the crimes to which he pled guilty because of these

intervening changes in the law.

On July 2, 2009, Stern filed the instant petition, seeking only writs of audita querela, and

error coram nobris.  Stern supplemented his filings to add claims under Section 2255 and 2241

when Judge Maas directed the parties to submit briefing on those remedies.  On February 23,

2011, Judge Maas held an evidentiary hearing, and subsequently denied Stern's petition.

**DISCUSSION**

**I.  Stern is Not Entitled to Section 2255 Relief**

    a.  Stern's Petition is Untimely and Not Entitled to Equitable Tolling.

A Section 2255 motion must be filed within one year of the latest of four dates.  28 U.S.C. § 2255(f)(1)-(4).  Judge Maas concluded that under all four triggering dates, Stern's petition is untimely.  (R&R at 18-19.)  The Court finds no error with this determination.

AEDPA's statute of limitations is subject to equitable tolling only if a petitioner can show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Holland v. Florida, 130 S. Ct. 2549, 2562 (2010). Magistrate Judge Maas found that Stern is not entitled to equitable tolling because he did not pursue his actual innocence claim with diligence.  (R&R at 20.)  Specifically, Stern could have pursued his claim during the limitations period but did not do so until July 2, 2009, more than a year after his limitations period expired.  Magistrate Judge Maas noted that although Stern may not have prevailed, futility did not excuse his failure to raise the claim.  (R&R at 20-21 (citing Engle v. Isaac, 456 U.S. 107, 130 n.35 (1982)).)  Stern also could have pursued his claim after Santos and Cuellar were decided.  Therefore Stern is not entitled to equitable tolling.  There is no clear error in these conclusions or recommendations.

    b.  Stern Has Not Satisfied the Actual Innocence Gateway With Respect to All
       Counts

"[N]otwithstanding an otherwise unexcused delay in filing," habeas petitions may be reviewed based on a showing of actual innocence.  Rivas v. Fischer, 687 F.3d 514, 539-540 (2d Cir. 2012).  A showing of actual innocence is a procedural "gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Herrera v. Collins, 506 U.S. 390, 404 (1993).

> To satisfy the . . . standard, a claim of actual innocence must be both 'credible' and 'compelling.'  For the claim to be 'credible,' it must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'  For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt . . . .

Rivas, 687 F.3d at 541 (internal quotations and citations omitted).

Judge Maas assumed, without deciding, that a claim can satisfy the "credibility" requirement based on an intervening change in law.  (R&R at 25-26.)  He also assumed, without deciding, that a jury would be required to find, under Santos, that the revenues from Stern's check cashing scheme constituted "profits."  (Id. at 28-29.)  Based on these assumptions, Judge Maas decided that Stern may be able to show his actual innocence of the crimes charged in Counts Three and Four based on the intervening change in law in Cuellar but not Santos.

With respect to Santos, Judge Maas noted that "a reasonable juror could have concluded beyond a reasonable doubt that the cash transported to the United States . . . constituted . . . profits" because "it cannot be said that the transactions giving rise to Counts Three and Four constituted payment for the 'essential expenses of operating' the check cashing scheme."  (R&R at 29 (citing Santos, 553 U.S. 528).)  However, with respect to Cuellar, he concluded that it is more likely than not that a reasonable juror could find that the sole reason for transporting the proceeds of the stolen checks from Israel was to pay Stern's co-conspiring check supplier, "not . . . to disguise or conceal the nature, location, source, ownership, or control of the money."  (R&R at 29 (citing Cuellar, 553 U.S. at 561-68).)

By contrast, with respect to Claims Five and Six arising from the narcotics money laundering scheme, Judge Maas determined that Stern failed to establish his actual innocence based on either Cuellar or Santos.  He noted that Santos could not support Stern's actual

5

innocence because the term "proceeds" is not limited to "profits" where the predicate offense

involves the sale of contraband.  (R&R at 31 (citing United States v. Quinones, 635 F.3d 590,

600 (2d Cir. 2011)).)  Further, Cuellar provided no support because the record demonstrated that

Stern knew that when receiving and delivering drug trafficking proceeds, the transactions were

designed to disguise or conceal the nature, location, source, ownership, or control of the

proceeds.  (R&R at 34-36.)  Having concluded that Stern failed to meet the actual innocence

gateway, Judge Maas did not consider Claims Five and Six on their merits.

There is no clear error in these conclusions or recommendations.

c.   Stern's Claims With Regard to Counts Three and Four Fail on the Merits

Stern's first substantive challenge to his conviction is that there was no factual basis for

his plea.  See FED. R. CRIM. P. 11(b)(3).  The Rule requires that the court "assure itself . . . that

the conduct to which the defendant admits is in fact an offense under the statutory provision

under which he is pleading guilty."  United States v. Maher, 108 F.3d 1513, 1524 (2d Cir. 1997).

Judge Maas found that the conduct Stern admitted in his allocution supported his guilty plea to

Counts Three and Four, including Cuellar's requirement that the concealment constitute a

purpose of the transportation.  (See R&R at 37-39; Plea Tr. at 25.)  During the allocution, Stern

admitted that the check cashing scheme involved wire transfers for the purpose of concealment.

(Id. at 39; Plea Tr. at 25.)  Although the wire transfers likely did not occur in connection with the

check cashing scheme, this factor did not affect the Rule 11(b)(3) analysis.  (Id. (citing Maher,

108 F.3d at 1524).)

Stern's second substantive challenge is that his plea was not knowing or voluntary.  A

plea can be collaterally attacked as not knowing or voluntary when the facts underlying the plea

no longer constitute a crime due to an intervening change in law.  Salas v. United States, 139

6

F.3d 322, 325 (2d Cir. 1998).  However, the petitioner cannot challenge the facts themselves.  Id.
As noted above, Judge Maas concluded that the facts underlying Stern's plea establish all the
requisite elements of Counts Three and Four.

Stern's third substantive challenge is a freestanding actual innocence claim.  Assuming
that such relief is cognizable in a non-capital case under Section 2255, Judge Maas denied
Stern's claim because his guilty plea waived his challenge to the facts in his allocution.   (R&R
at 41-42.)  There is no clear error in these conclusions or recommendations.

## II.  Stern is Not Entitled to Section 2241 Relief

In certain circumstances, claims within the scope of Section 2255 may be cognizable under
Section 2241.  A petitioner must demonstrate not only that "relief is procedurally unavailable
under Section 2255, but also must assert a claim of actual innocence that (a) is 'provable . . . on
the existing record,' and (b) 'could not have effectively [been] raised . . . at an earlier time.'"
Poindexter v. Nash, 333 F.3d 372, 378 (2d Cir. 2003).  Judge Maas concluded that relief was not
procedurally unavailable for certain of Stern's claims, Stern's claims could have been raised
earlier, and his actual innocence could not be supported by the facts contained in his allocution.
Accordingly, Judge Maas denied Stern relief under Section 2241.  (R&R at 42-44.)  There was
no clear error in this conclusion.

## III. Stern is Not Entitled to the Writs of Audita Querela and Coram Nobris

"[I]f the absence of any avenue of collateral attack would raise serious constitutional
questions about the laws limiting those avenues, then a writ of audita querela would lie."  United
States v. Richter, 510 F.3d 103, 104 (2d Cir. 2007).  Judge Maas noted that since Stern could
have raised his actual innocence claim earlier, he was not entitled to a writ of audita qurela.
(R&R at 44.)  He also found that Stern was not eligible for a writ of error coram nobris because

he is still serving his sentence.  (Id. at 44 (citing Fleming v. United States, 146 F.3d 88, 89-90 (2d Cir. 1998).)  Finding no basis to set aside Stern's money-laundering convictions, Judge Maas refused to vacate the bank fraud claims (One and Two).  (R&R at 45.)  There was no clear error in these conclusions.

## CONCLUSION

For the reasons set forth above, the Court finds no clear error in Judge Maas' January 4, 2013 R&R and adopts it.  Accordingly, Stern's petition is DENIED.   A certificate of appealability will issue.   The Clerk of Court is directed to enter judgment in favor of the respondent and terminate this case.

Dated:  New York, New York
       March 14, 2013

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge